IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br>31 Hopkins Plaza, Suite 1432<br>Baltimore, MD  21201<br><br>　　　　　　Plaintiff,<br><br>　　　　v.<br><br>MARYLAND DEPARTMENT OF TRANSPORTATION, STATE HIGHWAY ADMINISTRATION,<br>　7201 Corporate Center Drive,<br>　Hanover, MD  21076<br><br>　　　　　　Defendant. | Civil Action No.<br><br>COMPLAINT<br><br>JURY TRIAL DEMAND |

## NATURE OF THE ACTION

This is an action under the Equal Pay Act of 1963 to restrain the unlawful payment of wages to employees of one sex at rates less than the rates paid to employees of the opposite sex, and to collect back wages due to an employee as a result of such unlawful payments. The United States Equal Employment Opportunity Commission ("the EEOC" or the "Commission") alleges that Defendant Maryland Department of Transportation, State Highway Administration ("Defendant") discriminated against formerly entitled District Community Liaison ("DCL") Robert Rager ("Rager") by paying to him lower wages than those paid to his female counterparts for performing equal work.

## JURISDICTION AND VENUE

1.　Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.  This action is authorized and instituted pursuant to Sections 16(c) and 17 of the

1

Fair Labor Standards Act of 1938 (the "FLSA"), as amended, 29 U.S.C. §§ 216(c) and 217, to enforce the requirements of the Equal Pay Act of 1963, codified as Section 6(d) of the FLSA, 29 U.S.C. § 206(d).

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Maryland, Northern Division.

PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation and enforcement of, *inter alia*, the Equal Pay Act, and is expressly authorized to bring this action by Sections 16(c) and 17 of the FLSA, 29 U.S.C. §§ 216(c) and 217, as amended by Section 1 of Reorganization Plan No. 1 of 1978, 92 Stat. 3781, and Public Law 98-532 (1984), 98 Stat. 2705.

4. At all relevant times, Defendant has continuously been the Maryland governmental administration that maintains Maryland's numbered highways.

5. At all relevant times, Defendant has acted directly or indirectly as an employer in relation to employees and has continuously been an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

6. At all relevant times, Defendant has continuously been a public agency within the meaning of Sections 3(x) of the FLSA, 29 U.S.C. § 203(x).

7. At all relevant times, Defendant has continuously employed employees engaged in commerce or in the production of goods for commerce within the meaning of Sections 3(b), (i) and (j) of the FLSA, 29 U.S.C. §§ 203(b), (i) and (j) has continuously been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Sections 3(r) and (s) of the FLSA, 29 U.S.C. §§ 203(r) and (s), in that said enterprise has continuously been an

enterprise that has employees engaged in an activity of a public agency.

## STATEMENT OF EQUAL PAY ACT CLAIMS

8. Since at least May 13, 2015, Defendant has violated Sections 6(d)(1) and 15(a)(2) of the FLSA, 29 U.S.C. §§ 206(d)(1) and 215(a)(2), by paying to Rager lower wages than those paid to his female colleagues for performing equal work.

   a. Rager began working for Defendant as a DCL with the State of Maryland in October 2007, first as a contractual employee and later, in June 2014, as a regular state employee. He was one of three original DCLs with the State of Maryland.

   b. As a DCL, Rager continuously has performed community outreach and public relations functions, supports and reports to the District Engineer, and also supports Defendant's Office of Communications.

   c. Defendant is comprised of seven District Offices that represent geographical locations throughout Maryland.

   d. Since at least 2016, Defendant consistently has rated Rager's job performance as "Far Exceeds," the highest rating.

   e. Prior to Defendant's implementation of the DCL title, the employee performing the DCL functions was titled Special Assistant.

   f. Following the creation of the DCL title, the Special Assistant title was used interchangeably or was combined with the DCL title.

g. Around Spring 2021, Defendant created the new title of Community Relations Manager ("CRM") and converted all DCLs to CRMs.

h. Since 2007 to the present, there has been no functional difference in the job performed by a DCL, DCL/Special Assistant, a Special Assistant, and a CRM assigned to the field.

i. CRMs (formerly DCLs), perform the same core duties, which include

   i. serving as a community and customer service liaison;

   ii. managing communications with customers regarding project, programs and associated issues; and

   iii. handling complex and controversial projects and issues developing and implementing public information campaigns and representing the District as necessary in presenting these projects to community and business leaders, media representatives and the general public.

j. The CRM (formerly DCL) position requires the following qualifications:

   i. A Bachelor's degree from an accredited college or university;

   ii. Four years of experience in administrative or professional work; and

   iii. Two years of experience in public relations or community relations as it relates to event management.

k. With respect to Rager's qualifications,

   i. In 1998, he earned a Bachelor's Degree in Communication Studies;

   ii. Since 2007, he continuously has worked as a DCL for Defendant;

   iii. For at least 27 years, he has worked in public affairs and community relations, initially for four years as the Communications Coordinator for a major retailer, then for

nine years as the Founder and Principal of a Communications business, and thereafter for Defendant.

        iv.    Throughout his work in public affairs and community relations, Rager also has worked in media as an editor and staff writer for a local publication and as a Publications Coordinator for the County Executive of Prince George's County.

    l.    From 2007 to approximately June 24, 2015, Rager served District 5.

    m.    Around May 2015, Defendant hired Hilary Gonzales, a female, as DCL of District 5. Gonzales had joined Defendant a month earlier, and it paid her approximately $11,000 more than it paid Rager.

    n.    Until June 24, 2015, Rager remained as DCL of District 5 and helped to train Gonzales in her DCL position. Thereafter, Defendant transferred Rager to serve as DCL for both Districts 1 and 2 with no change in salary and no training.

    o.    In 2017, Gonzales left her position as DCL of District 5 and Defendant assigned Ashley Ross-Scott, a female, as DCL of District 5. Ross-Scott had recently received her Bachelor's degree in English. Defendant paid to Ross-Scott approximately $10,266 greater than it was paying to Rager at the same time.

    p.    Sometime in 2018, Ross-Scott left her position as DCL of District 5. Eventually, Defendant assigned Kellie Boulware, a female, as DCL of District 5. Defendant paid to Boulware approximately $22,960 greater than it was paying to Rager at the same time.

    q.    Rager had greater years' experience as a DCL than Gonzales, Ross-Scott, and Boulware.

r.       In addition to Defendant paying greater wages to Rager's successors in District 5, it consistently paid greater wages to all Rager's female colleagues in its other districts, all with less seniority and with less DCL experience:

i.       Shannon Coyne interned for Defendant in the summers of 2013 and 2014. For four months in 2016, she worked for Defendant as a temporary assistant. Also in 2016, she received her Bachelor's degree in Marketing and International Fashion. When, in June 2018, Defendant hired her as a DCL for District 3, Defendant paid her a salary of $64,214, compared to Rager's $59,719 at that same time. By July 2020, Coyne was earning $69,219, compared to Rager's $62,438. Moreover, Coyne shared the responsibilities of District 3 with another DCL.

ii.      Defendant hired Shelley Miller as a DCL for District 6 in April 2019 and paid her $61,169, while Rager was earning $60,018. Miller held an Associate's degree in Early Childhood Education and prior to joining Defendant, she co-owned an outdoor recreation events planning business. By July 2020, Miller was earning $67,909 compared to Rager's $62,438.

iii.     Defendant hired Elizabeth Harris as a DCL for District 7 in March 2019 at $57,502. Harris held a Bachelor's degree in Mass Communications. Less than two years later, by July 2020, she was earning $64,143, compared to Rager's $62,438. Prior to joining Defendant, Harris had worked as a local newscaster, had spent over a year as a public information specialist for a local housing commission, and had sold jewelry and marketed insurance.

s.       District assignment has no impact on the salaries of CRMs (formerly DCLs).

9.       As a result of the acts complained of above, Defendant unlawfully has withheld

the payment of wages and is continuing to withhold the payment of wages due to Rager.

10.	The unlawful practices complained of in paragraph 8 above were willful.

## PRAYER FOR RELIEF

Wherefore, the Commission requests that this Court:

A.	Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from discriminating against males with respect to their compensation and from paying male employees lower compensation than their female comparators for performing equal work.

B.	Order Defendant to institute and carry out policies, practices and programs that provide equal employment opportunities for males and eradicate the effects of its past and present unlawful employment practices.

C.	Order Defendant to make whole Rager by providing appropriate backpay with prejudgment interest, in amounts to be proved at trial, and an equal sum as liquidated damages, as a result of the acts complained of above.

D.	Grant such further relief as this Court deems necessary and proper in the public interest.

E.	Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.

                                Respectfully submitted,

                                CHRISTOPHER LAGE
                                Deputy General Counsel

                                GWENDOLYN YOUNG REAMS
                                Associate General Counsel

                                /s/_____
                                DEBRA M. LAWRENCE (Bar No. 04312)
                                Regional Attorney
                                Phone: (410) 801-6691
                                debra.lawrence@eeoc.gov

                                /s/_____
                                MARIA SALACUSE (Bar No. 15562)
                                Assistant General Counsel
                                phone: (202) 921-2758
                                maria.salacuse@eeoc.gov

                                U.S. EEOC
                                Baltimore Field Office
                                31 Hopkins Plaza, Suite 1432
                                Baltimore, Maryland 21201